The action was brought on a note of hand executed by Thomas Gay, in his life time. His executors filed several pleas in their answer, among which was one that the consideration for which the note was given was illegal and immoral and had wholly failed. Judgment was rendered for the plaintiff, but on motion it was set aside and a new trial granted. On the second trial the jury found a special verdict, on the submission of which to the court, judgment was given for the defendant, and from this an appeal was taken. The verdict is expressed in the following terms: “We, the jury, find the following as the facts, and request the court, if the law be with the plaintiff, we find for the plaintiff, the sum of five hundred and -fifty dollars balance of debt, and the further sum of one hundred and thirty-three dollars and seventy-five cents interest. We find that Thomas Gay, in his life-time, made and executed the note sued on for and in consideration as set forth in the deed or contract entered into between said Gay, in his life-time, and said White, the plaintiff, now filed and prayed to be taken as a part of this verdict marked exhibit A, and no others; that the said White has been always willing and ready to comply with his portion of the contract; that said Gay, in his life-time, has failed to pay said note; that the same has been presented to his representatives and refused.” It was further in proof that said White offered either to rescind said contract or to have the money due him paid; or if said contract be illegal, they pray the court to render a judgment for the defendant, etc.
The exhibit A was an agreement between White and Gay, reciting in substance that White was about to institute a suit against one Duckworth for the recovery of a half league of land, which land was in the possession of Duckworth; and which said Duckworth claimed under an assignment of the original deed made by White to him, said Duckworth, but the condition of the assignment had never been complied with by Duckworth. Gay then binds himself to pay to White the sum of six hundred dollars at a future day; on consideration of which White assigns, transfers and sets over to him, Gay, all his right, title and interest in and to the said half league of land, and authorizes the said Gay to bring suit in his name (if the same be necessary) in any of the courts of the republic for the recovery of the land, with the understanding that Gay was to pay all the expenses incurred in conducting said suit or suits, and that White was to furnish the evidence necessary to establish the invalidity of Duckworth’s *(276) claim and the validity of his own title to the land, and also the names of the witnesses by whom his title could be sustained. The instrument was dated the 10th January, 1838, and the question presented is, whether the transaction was or was not in contravention of the laws and policy of the country at the period of its execution.
The appellees insist that it was tainted with champerty and therefore void.
In the decision of the question, it will not be essential to review in detail the doctrines of the common law of England on the subjects of champerty and maintenance, nor how far the more ancient cases have been disturbed, and the more ancient fules modified by the principles and decisions of the courts of equity; nor will it be material to inquire whether this transaction might not be maintained at common law without a violation of the principles of that system of jurisprudence. It may, however, be observed that those principles are not contravened by the purchase of the whole interest of another in a contract, security or other property, although the same may be in litigation, provided the purchaser does not undertake to pay any costs or make any advances beyond the mere support of. the exclusive interest, which he has acquired; and in illustration of the rule it is said to be extremely clear that an equitable interest, under a contract of purchase of real estate, may be sold, though the interest be subject to the decision of the court of equity on a contract for a specified performance. If subpurchasers from an original vendee can have the benefit of his contract, and can compel him to permit the use of his name in judicial proceeding to have that contract specifically enforced, it might on principle and reason be well contended that a second purchaser (as was the case here) from the original vendor, who claimed a rescission of the first contract of sale, would lawfully purchase his entire interest in the thing litigated, and the purchaser to pay all costs and advances, necessary to the support of the subject-matter to him assigned, would not contain any of the offensive ingredients of champerty or maintenance. 2 Story Eq. p. 382, secs. 104-8-9-50-1-2 3-4-5. Sug. on Yend. ch. 9, sec. 6.
Before turning to the laws of Spain for the rules on which this controversy must be decided, I will take a cursory glance at the provisions of the laws of Rome, France and Louisiana on similar subjects, as they have been alluded to in the briefs; and from their general resemblance and frequent identity with the former laws of this country, they deserve a passing notice.
In Brown’s Civil Law, 1 vol. p. 256, it is laid down that the civil law was particularly careful to prevent what we call champerty, by *(277) forbidding things litigious to be alienated (meaning by things litigious those about whose property there was any dispute), during the time of the contest.
Whether by the Roman law a right was denominated litigious, as well before suit, when the same was apprehended, as after the commencement of process, cannot, from the want of proper authorities, be fully ascertained. In Prevost’s Heirs v. Johnson et al. 9 Mart, p. 183, it is held that a right was not characterized at Rome as litigious, until it was controverted in a judicial proceeding, and an authority was quoted in support of the definition.
In France, according to Pothier in his treatise on Sales, p. 353, a right was regarded as litigious, not only after the inception of the suit, but- also before, when the same might be reasonably apprehended. Put by the Oode Napoleon, a right is not considered as litigious until it is put in contest in a suit. A sale of such right, whether before or after the commencement of the action, is not, under the laws of that kingdom null'and void; and the rights and obligations of a contract for a thing in litigation are set forth by Pothier fully and distinctly. Among the obligations of the purchaser, <fche first is the payment of the agreed price, as in other contracts of sales. For the benefit of the debtor, it is ordained that the buyers of litigious rights shall not be able to exact of the debtor anything more than they gave as the price of assignment with interest; and that the debtor shall be discharged from the remainder; and that this was, in a law of Anas-tasius, confirmed by Justinian. Where the assignment had a just cause, the assignee was not regarded as a buyer of process, and was permitted to recover the full amount of the claim purchased.
In Louisiana, a litigious right is one about which a suit has not only commenced, but had advanced in its progress to the contestation, and its transfer is expressly authorized by law. La. Code, arts. 2622-23-24; 9 Mart. 183; 4 Mart. (N. S.) p. 200.
I have hereby alluded to these doctrines of the common Roman, French and Louisiana laws, without intending to engage in their discussion, or to derive any assistance from them in the determination of this case; nor is there any absolute necessity for recurrence to the reason or principles of foreign laws, for the solution of the question growing out of this contract, as the provisions of the laws of Spain relative to such contracts being full and distinct, and embracing all the circumstances of the transaction, must control the action of the-court.
Is the right of the appellant to the premises which were the subject-matter of this contract, one which, under the laws of Spain, would *(278) Re denominated litigious; and was the transfer of such a right prohibited by the laws of Spain? The term litigioso, litigious, is defined to be that which is in dispute in a suit, and the subject of the suit cannot, during its continuance (with certain exceptions pointed out in the law), be sold or transferred. It will be unnecessary to examine the pi-ohibitions on the alienation of property about which a suit is pending, or whether the same may be subject to any and what modifications. For the laws and doctrines on the subject, see 3 Partidas, tit. 7,1. 13,14; Diccionario de Legislacion, verbo Litigioso, p. 382; 2 Sala, tit. 10, sec. 14.
The property, in relation to which this contract originated, was not at the time of the sale in litigation; and is therefore not obnoxious to the provisions restrictive of the sale of litigious rights; and the contract was not in contravention of even the letter of the law; unless prohibited by the laws 15 and 16, of tit. 7, of 3 Partidas.
By the first of these laws, a person under apprehension of a suit for property which he has in possession is prohibited from alienating the same to a person more powerful, artful or obstinate than himself, or who resides in anether country, for the purpose of throwing difficulties in the way of his adversary; and that under such circumstances of fraud, the suit may be instituted against the assignor or assignee at the option of the plaintiff.' By the latter law it is declared in substance, that if the plaintiff before he cites his adversary shall transfer the claim against him to another person, rendered more powerful than himself in virtue of some office which he holds, such transfer will be invalid, and the defendant will not be bound to answer him who so acquires it, and the plaintiff shall lose all right against the adversary in the cause.
But if the plaintiff had, before he cited his adversary, alienated, abandoned cmd truly conveyed all his right to the thing to awy one else, not more powerful than himsblf such alienation, having been made without fraud, would be valid.
This provision has still the force of law as in the late, edition of Sala it is expressed in substantially the same terms. A similar provision was not unknown to the laws of France at the period when Domat wrote; as in his Ciyil Law, book 1, tit. 2, he says that he has not set down the rulés of the Homan law prohibiting the alienating of litigious things, as custom in France has limited those prohibitions to sales made to persons who by their authority are able to create trouble to those who pretend a right to what is in dispute, Such as the j udges and other officers who have a share in the administration of justice.
*(279) The appellees have not shown that the testator held any office which, would give him any power in relation to the subject-matter of the contract; and they would not of course contend that he was more artful and obstinate than the appellant. The defense of the appellees, while it appears to be unsanctioned by the principles of any of the systems of law foreign to the contract to which reference has been made, is without support from the provisions of the laws of Spain under which the contract arose and by which it is controlled.
The record shows that the appellant was always ready and willing to comply with his portion of the contract, and that he had offered either to rescind the contract or have the money paid him, while there is no evidence that the appellees, although refusing to pay the purchase money, were willing for a rescission of the contract. The transaction being then valid in law, the appellant is entitled to have its obligations enforced as against the appellees.
We deem it unnecessary in this case to engage in any discussion of the policy or impolicy of restriction on the free alienation of landed property; or on the proper rules for the interpretation of provisions of law by which this right is attempted to be controlled; very important considerations are suggested in the argument as connected with this view of the subject, and when they become essential to the decision of a controversy, they will require the most mature, consideration. The weight of the points presented is fully appreciated, but as this case can be determined by the letter .without recurrence to the spirit of the law or its object, or how far its liberal provisions should be modified by the policy or circumstances of the country — we leave them open for further investigation without the expression of any opinion controlling the action of the court.
The judgment of the court below being erroneous, it is ordei’ed, adjudged and decreed that the same be set aside — and the court here proceeding to render such judgment as the court below should have pronounced, it is ordered; adjudged and decreed that the plaintiff have and recover of the defendants the sum of five hundred and fifty dollars balance of debt, and the sum of one hundred and thirty-three dollars and seventy-five cents as interest, together with all costs expended by him in the district and supreme courts in and about the prosecution of his said suit.