HARRIET W. BENTINCK v. JOSEPH FRANKLIN AND
GALVESTON CITY COMPANY.

1. Statutes of limitation have reference to the remedy, and do not, in any sense, confer a vested right.

2. It was competent for the people, in adopting their organic law, to declare a suspension of the statute of limitation.

3. Land laws conferring title by prescription are statutes of limitation, and come within the principle of the 43d Section of 12th Article of the Constitution.

4. There is no law prohibiting champerty in force in this State.

APPEAL from Galveston. Tried below before the Hon. A. P. McCormick.

Joseph Franklin, appellee, brought this suit of trespass

to try title against Henry W. Bentinck, April, 1870, for the recovery of certain lots in the city of Galveston.

The defendant pleaded "not guilty," limitations of five years under deed duly registered, and of ten years, both exclusive of the period between January 28, 1861, and September 2, 1866; also ten years non-entry, and outstanding title.

Defendant afterwards pleaded "that the title of plaintiff was wholly derived from the Galveston City Company, which rested wholly upon proceedings had in case No. 96; that twenty years ago the defendant, with a full knowledge of all the facts affecting the validity of the proceedings in said suit, admitted that all the proceedings in and under said suit, so far as they affected the title to the property in controversy, were void; that said company did then, upon mature deliberation, with advice of counsel, determine not to claim said lots under said proceedings, and dropped the same from its property rolls and refused to pay taxes thereon. That by the admissions of said company, and their uniform course of conduct relative to said property, defendant and those under whom she claims were led to believe that the said company neither had nor pretended to have any claim whatever to said lots, and did so verily believe; that she was induced by such admissions and conduct by said company innocently to act with reference to said property to her great damage, and to pay out and expend large sums of money in the regular payment of all taxes thereon for about twenty years, and in the erection of improvements. That the plaintiff had full knowledge of all of these facts before and at the time of his pretended purchase; that he was not an innocent purchaser, but on the contrary, he had never paid any part of the purchase money; that the agreement between plaintiff and said company was one of champerty, common barratry and maintenance; that it was by

them agreed that no part of said purchase money should be due and payable by the plaintiff, except as contingent upon their success in this cause, and that the price so agreed to be paid did not exceed one-third of the value of the property at the time of the pretended purchase.

Galveston City Company appeared, excepted to being made a party, demurred generally, and pleaded "not guilty."

There was an agreement of counsel admitting original title of Galveston City Company under Menard grant, and regular payment of all taxes by defendant Bentinck since his purchase at tax sale.

Pending the suit, Henry W. Bentinck, original defendant, died, and Harriet Bentinck, surviving wife and appellant, was made a party.

Upon the trial the defendant offered to prove by James P. Cole, stockholder and agent of the Galveston City Company, that plaintiff, having no interest in the property in controversy, had hunted up the supposed defect in the title of the defendant, and a supposed better title in said company, upon which this suit is founded, and had of his own motion approached said company and obtained from them a deed thereto, upon consideration that he would institute and prosecute, at his own costs, suit for recovery thereof, and in event of success would pay to said company a part of its estimated value; which was objected to by counsel for plaintiff and Galveston City Company, on the ground that champerty was not obnoxious to the courts of Texas, and was ruled inadmissible by the court, on the ground, "that if champerty was obnoxious to our laws, proof of the facts relied on as constituting it could not be introduced under the general terms of champerty, maintenance and common barratry, but that said matters must be specially pleaded."

Defendant also offered to prove that the witness, the

general agent of the said company for sixteen years be-
fore the suit, had never rendered for taxes or paid taxes
on the lots in controversy, nor had the company paid
taxes thereon, or asserted claims thereto, until the making
of the deed to plaintiff; that the Galveston City Company,
twenty years before the institution of this suit, and with
a full knowledge of the facts affecting their title to the
property in controversy, ceased to claim the same, and
openly disavowed title, and that defendant had been in-
duced by the uniform conduct of said company and
their declarations to act with respect to said property to
her injury. All of which was objected to by counsel for
plaintiff and said company, and excluded by the court.

This action of the court was assigned for error.

The plaintiff derived title through the Galveston City
Company, who bought the property April 3, 1856, at
sheriff's sale, under proceedings had in said suit No. 96.
The City Company made their deed to plaintiff in 1870.
On the nineteenth of February, 1855, defendant purchased
the property at tax sale, and received tax deed therefor
on the eighth day of May, 1856, which was duly recorded
on same day, and had regularly paid all legal taxes on
the property since that time, and openly claiming it as
his own.

With respect to the use, cultivation and enjoyment of
the property by defendant, the character of his improve-
ments and their continuousness, there was much contra-
dictory evidence between witnesses.

The only instruction given by the court was as follows:
"The plaintiff must show title in himself. He has shown
such title, and will be entitled to your verdict, unless de-
feated by defendant's plea of five years' limitations under
deed duly registered, etc. If the jury believe from the
evidence that the defendant had five years' peaceable
possession of the premises in controversy, cultivating,

using, or enjoying the same, and paying taxes thereon, and claiming under a deed duly registered for a period of five years before the institution of this suit, and excluding in your computation so much of the time as is between the twenty-eighth of January, 1861, and the thirtieth of March, 1870, they will return a verdict for the defendant."

Verdict and judgment for plaintiff, from which defendant appealed.

*Gould & Street*, for appellant.—1. The court erred in the instructions given the jury.

The question raised involves two points; and first, does the twenty-fourth section of the twelfth article of the Constitution of 1869, by any necessary or proper construction, apply to a case where, before its adoption, the title to lands had been perfected under the existing laws? and second, if such be the construction necessarily arising from the terms of the provision, was it competent for the convention of 1869, with ratification by the vote of the people and the assent of Congress, so to provide?

Limitations with respect to lands, especially in this State, may become something more than statutes of limitation. In personal actions, the remedy is barred by the mere efflux of time; no affirmative acts are done or required to be done by the supposed debtor, and no right of action is vested in him. But with respect to lands it is different; affirmative acts of a claim of ownership, possession and use, cultivation or enjoyment, done and performed by the supposed defendant, are prerequisites to the moving of the statutes in his favor, and these, when continued for the prescribed duration of time, vests in him the ownership of the lands and invest him with his affirmative remedy, by means of which not merely to defend, but to assert his title. They are, therefore,

more than mere laws of limitation; they are laws of property, and have for their sanction higher principles of justice and more obvious reasons of policy.   In the one case, without merit of the one party or demerit of the other, upon reasons of State merely, the debt is presumed to be paid; in the other, because of the failure of the one party through a series of years to pay the price of protection, viz., taxes, use, cultivation or enjoyment, the title of lands which he might have possessed is divested out of him and vested in the other party as the promised reward of his labor, and his toil, and his rendition to the government of its proper dues, continued for many years.

Statutes of limitation are said to be conclusive presumptives made by the law-making power, but the statute under which this defendant claims is ill-defined as a mere statute of presumption; it is only upon proof of acts done by him in conformity with the statutes that a presumption ever arises against his adversary, and upon such proof the laws of our land give him his action.

In Davidson v. Peticolas, 34 Texas, this court held that the statute requiring suit to first term of court to hold the drawer or endorser was not a statute of limitation, because an affirmative act was required of the holder.

In this case the defendant might, at any time between the second of September, 1866, and the thirtieth of March, 1870, have brought suit to quiet his title, and the title of the property would have been finally adjudged him by this court; but there was no requirement that he should sue; he was himself in possession, and there was no adverse claim, and under such circumstances it was against the policy of the law that he should sue.   As this court observes in Bender v. Crawford, 33 Texas, 745, it is not incompetent for the Legislature, and, *a fortiori*, the Constitutional Convention, to vary the remedy, so that some substantial remedy be left; but if the provision un-

der consideration should be held applicable in this case, all remedy whatever is taken away from the possessor of the land. After the lapse of five years the Galveston City Company ceased to have any right in the property, and, *eo instante*, the *jus proprietatis* became annexed to the possessions of defendant, Bentinck, and an adequate remedy was given for the protection of the right. In the very words of the statute, defendant Bentinck "is to be held to have full title, precluding all claims."

This argument proceeds upon the hypothesis that if Article 4623, Paschal's Digest, is a law of property and not a mere statute of limitation, the constitutional provision will not be held applicable to it, and that in determining that question this court will be influenced by a proper regard for vested rights in private property, and incline to construe the provision, if it may reasonably be done, as not referring to such a case. (Cases cited by Cooley, page 365, notes 4, 5.)

With respect to the power of convention to interfere with vested rights. We do not understand the decision in Bender v. Crawford, 33 Texas, to have proceeded upon the ground that the mere defense which was taken away by Section 43 of the 12th Article of the Constitution was a vested right. Though there is an intimation in that case that the Convention, with the sanction of Congress and the approval of the people, might divest private rights in private property, yet the question is far too great a one to be considered as decided by a case in which it was not involved.

2. The court erred in excluding the evidence offered, and all evidence whatever, under the plea of champerty; in other words, striking out the plea without its having been excepted to, because the defense which it set up was not set out with what was deemed sufficient particularity and detail. The counsel, not having excepted to the plea,

on the trial objected to all evidence under it, on the ground that champerty was not known to our law; but the court declined to meet that question, and notwithstanding the numerous decisions of this court, and the uniform practice, uninvited either by exception or argument, ruled the matter insufficiently pleaded and in effect struck out the plea, thus by this extraordinary course cutting the defendant from all opportunity of amending the plea, which he would otherwise inevitably have had on a ruling upon exceptions. (10 Texas, 586; 9 Texas, 63; 27 Texas, 365.)

The common law not inconsistent with the statutes or public policy of this State, is the rule of decision in the courts of this State.

3. Champerty at common law is a substantive defense in civil actions. With what institutions or public policy of this State does that doctrine conflict? And, first, upon authority: The only cases where this question has been made which have heretofore come before this court are White v. Gay, 1 Texas, 384; McMullen v. Guest, 6 Texas, 275; Carder v. McDermott, 12 Texas, 553; Clarke v. Koehler, 32 Texas, 684.

White v. Gay arose under and was decided in conformity with the supposed rule of the civil law, which only prohibits contracts of this kind after the moving of the suit, or perhaps after litigation actually begun.

The decision, however, was pronounced after the introduction of the common law, and the court speak discursively of the rule under that system without the intimation of a doubt as to its obtainance here.

McMullen v. Guest was a case where the defendant, McMullen, attempted to defend himself by showing that the plaintiff, Guest, had entered into some collateral contract with a third party in no way connected with the cause and not a party to it, which, it was claimed, was

30

champertous. This was obviously a totally irrelevant issue, and was so held by the court. It is assumed throughout that case that the common law doctrine of champerty is in full force in its application to civil actions in this State; but in conclusion the court say that because unnecessary for the cause, they do not wish to be understood as having adjudged that question; and Hemphill, C. J., speaking for himself and, as he states, to invite discussion when the question should arise, intimates a doubt whether the public policy of this State in its early settlement would not mitigate the common law rule in a particular class of cases, to-wit, the perfecting of titles by agents or attorneys for an interest in the land.

Carder v. McDermott was a suit for land, and the defense that the plaintiff had purchased the land when in the adverse possession of defendant. After an able review of the questions presented, Hemphill, C. J., in conclusion, says: "I have not discussed the doctrines of champerty or maintenance in this opinion, for the reason that they do not properly arise in this case, and no opinion is intended to be given upon them." In Clarke v. Koehler, after verdict and judgment in the court below, a stranger to the cause having obtained an assignment of the interest of the party cast in the suit, gave notice of appeal in his own name, which this court noticing from the record, said: "This court has not and will not allow this kind of champertous speculations to obtain a footing in the courts of this State. The appeal is dismissed."

The result of these cases is, that the common law doctrine of champerty is recognized as obtaining in Texas, as qualified only by the doubt expressed in Carder v. McDermott, whether or not that doctrine should be considered as applicable here in cases where attorneys or agents in the early history of the State have perfected land titles upon agreements for an interest in the property. Here it

has been thought that perhaps a public policy, of which this court was judicially informed by reason of the history of the country, should qualify the old rule.

Have we so far advanced in virtue that we may now throw behind us the safeguards by which the law has heretofore protected the community "from those pests of civil society that are perpetually endeavoring to disturb the repose of their neighbors and officiously interfering in other men's quarrels ?"

It is a sound maxim, good alike in morals and in law, " *Culpa est immiscere se rei ad se non pertinenti.*"

It will doubtless be argued that because we have not introduced the offense into our criminal code it is likewise abolished in our civil law. This inference is unwarranted by the premises. Are only those contracts against public policy in this State which have been declared punishable by our criminal law ? True, no act punishable criminally can be the foundation of a civil right, but *non constat* that all acts not so punishable will sustain civil actions. There is no statute punishing champerty in Ohio, and the criminal laws of that State are all statutory. Yet, see Key v. Vattier, 1 Ham., 132 ; and in Iowa, Brordmorital v. Thompson, 30 Iowa, 500 ; and in Indiana, Lafferty v. Jelly, 22 Ind., 471 ; Cognillard v. Bearns, 21 Ind., 479 ; Scoby v. Forner, 13 Ind., 117 ; and in Alabama, Holloway v. Chenella, G. Pon., 488 ; and in Massachusetts, 9 Met., 489 ; 17 Mass., 257 ; see also, 4 Cons., 449 ; 4 Mich., 537 ; and upon the general doctrine, 4 Black., 135 ; 4 Rent., 449 ; 8 M. & N., 689 ; 2 Parsons on Contracts, 764, *et seq.;* 1 Story's Eq., 3, 294 ; 2 Story's Eq., 1048, and notes. If the welfare of the State is to be subordinated to any peculiar speculative or peculative disposition of individuals, that must needs be encouraged and afforded opportunity for expansion, then let the rule

that has perhaps come to be threadbare from constant application for centuries be abolished.

*Ballinger, Jack & Mott*, attorneys for appellees.—We submit, first, that the defendant's pleadings present no case of champerty; second, that if the contract was champertous, it was only so as between Franklin and the City Company, not affecting Franklin's title to the property; and, third, that there is no act of the Legislature of Texas, and no rule of law established by her courts, which defines such an offense as champerty at common law, or pronounces against the validity of contracts which might have been deemed champertous under the common law rule.

There is no such criminal offense under the laws of Texas. Her policy has been a different and more liberal one as to real estate, and the grounds of such policy are manifest.

The decisions of our Supreme Court upon this question seem to render argument superfluous. We refer to the following cases: Carder v. McDermott, 12 Texas, 546; McMullen v. Guest, 6 Texas, 283; White v. Gay, 1 Texas, 384.

As to contingent interest in the thing in suit, or its proceeds, see Butterworth v. Kinsey, 14 Texas, 495; Hill v. Cunningham, 25 Texas; *In re* Paschal, 10 Wallace, 495.

Appellant's counsel cite and rely upon the case of Clarke v. Koehler, 32 Texas, 31, in which this language is used by the court: "We have repeatedly decided that the original plaintiffs to an action cannot sell out their interest *pendente lite*, and make new plaintiffs to the suit. This court has not nor will it allow such kind of champertous speculation to maintain a footing in the courts of this State."

We have no dissent to express to this doctrine, but it

applies in no manner to the case at bar.    The practice of selling out *pendente lite* is denounced by the court, and the expression, "champertous speculation," is used simply by the court as a term of reprehension.  As well might it be said, in case the expression had been "odious speculation," that the court had decided that "speculation" is forbidden by the laws of this State.

"The common law of England is not to be taken in all respects to be that of America.  Our ancestors brought with them its general principles, and claimed it as their birthright, but they brought with them and adopted only that portion which was applicable to their situation."

"A custom which runs through the whole land is the common law."  (Littleton.)

"A law is a just rule fitted to the existing state of things.  It must alter as the state of things alters to which it relates."  (Best, J.)

(Van Ness v. Packard, 2 Peters, 137; Wheaton v. Peters, 8 Peters, 591; Town of Paulet v. Clark, 9 Cranch, 292; Carson v. Blazer, 2 Binney, 384; Cates v. Waddington, 1 McCord, 580; Bullock v. Wilson, 2 Porter, 436.)

The courts of other States have pronounced upon this question, varying and abrogating the old English rule. (Fetrow v. Merriwether, 53 Ills., 275; Rowe v. Beckett, 30 Ind., 154; Hovey v. Hobson, 51 Maine, 62; Nichols v. Bunting, 3 Hawks (N. C.), 86; Moody v. Harper, 38 Miss., 599; Webb v. Camp, 26 Ga., 354; Danforth v. Streeter, 28 Vt., 490, 495; see decisions in Dillon v. Dougherty, 2 Grant's Cases (Penn.), 99; Whittemore v. Bean, 6 N. H., 50; Smith v. Smith, 11 N. H., 450; Poyas v. Wilkinson, 12 Rich. Law R., 428; Roberts v. Cooper, 20 How., 483; Hall's Lessee v. Ashley, 9 Hammond, 99; Wilson v. Merriwether, 53 Ills., 279; Wright v. Meek, 3 Green's Iowa R., 489; Lytle v. State, 17 Ark.)

The case of Newkirk v. Cone, 18 Illinois, 449, involving the question of champerty, reviews the whole field of discussion, and the opinion delivered by the court is able and clear. The court say:

"Undoubtedly the common law, and British statutes in aid thereof, as they stood at the period of the first settlement of the American colonies by British subjects, the year 1607, and adapted to our institutions and condition, are the law of this State so far as they remain unrepealed by statute. But our statutes have materially changed, if they have not wholly superseded, that law, in regard to maintenance and champerty. Our statutes dispense with livery of seizin in the conveyance of land, and enable any one claiming right to land, although out of possession, and although the same be in the adverse possession of another, to convey such interest as he may have therein, and give the purchaser the right to sue for the recovery of the land. If the law sanctions the sale by the party out of possession of the land held under adverse title by another, it necessarily sanctions the purchase of disputed titles, which require the aid of the law to make them available; and as necessarily sanctions the usual means of ascertaining their existence, and of judging of their validity by examination of the public records or land titles, and also the prosecution of actions in the courts for the recovery of the land. It cannot be said that the law authorizes a thing to be done, and at the same time denies the ordinary means of doing it."

The case of Mathewson v. Fitch, 22 California, 86, decided in 1863, turns upon this precise question. The language of the court, in its opinion, applying as well to Texas as to California, in the absence of a statutory rule, seems conclusive. The closing paragraph is in these words:

"There is no statute on the subject in this State, and we

have no doubt that the Legislature of 1850, when it adopted the statutes which were deemed necessary to organize the legal system of the State, by omitting to enact any such statute, acted in the spirit of the decisions which hold such laws inapplicable to this country, and with the direct purpose that there should be no law relating to the subject. In our judgment, in the. absence of such statute, the offense of maintenance is unknown to the laws of this State."

These two cases, from Illinois and California, with the reasoning and authorities on which they are based, are respectfully referred to the court as irresistible and unanswerable upon the issue under discussion.

WALKER, J.—Joseph Franklin brought this suit against Henry W. Bentinck to recover certain lots in the city of Galveston. The defendant pleaded "not guilty;" also the ten and five years' statutes of limitations. He also set up title in himself under a purchase at tax sale, and likewise outstanding title.

It appears that the Galveston City Company, through which the plaintiff claims title, purchased the lots at judicial sale. This title is attacked, and the Galveston City Company is made a party. The errors assigned, on which we are asked to reverse this case, are five in number, viz.: "First—The court erred in the charge as given." "Second—The court erred in excluding the evidence offered under the defense of champerty." "Third—The court erred in excluding the evidence offered under the defense of estoppel." "Fourth—The court erred in excluding evidence under the defense of ten years' non-entry." "Fifth—The court erred in entering up judgment on the verdict."

The question raised by the first of these assignments has been settled by this court in Bender v. Crawford, 33

Texas, 745, and subsequent cases. We hold that statutes of limitation have reference to the remedy, and do not in any sense confer a vested right, and that it was perfectly competent for the people in adopting their organic law to declare the suspension of these statutes. It was done upon the maxim *inter arma leges silent.* We have also held that the land laws conferring title by prescription are statutes of limitation, and come within the principle of the 43d Section of the 12th Article of the Constitution. The second assignment of error is that most insisted on by counsel. Whether the law prohibiting champerty, or *campi partitir*, is to be regarded as a part of the common law, and in force in this State, is the question presented. The question has been before this court in White v. Gay, 1 Texas, 384; McMullen v. Guest, 6 Texas, 275; and Carder v. McDermott, 12 Texas, 553; and it is also claimed that the court passed upon the question in Clarke v. Koehler, in 32 Texas, 684. In the latter case the question of champerty was not before us on the pleadings in the case; the court simply disapprobating the conduct of one of the parties, applied to it the term champerty, adjectively, without meaning to be understood as applying the penalty of champerty to it, or holding that the law of champerty was actually in force. The law has not been recognized as in force in this State by any of the former decisions.

Whether the English statutes prohibiting common barratry, maintenance and champerty have ever come to be regarded as a part of the common law of England, even in that country, we think, is somewhat doubtful. They have certainly not been so considered by the courts of this country, unless in the State of New York, which would be regarded as an exception to the rule. The English statutes, if not in terms, have been in principle adopted by the Legislatures of some of the States; but

neither of the statutes passed in the reign of Edward I. nor Edward III., nor has that of 8 Elizabeth, c. 2; 12 George I., c. 29; nor 32 Henry VIII., c. 9, ever been adopted by the Legislature of Texas.

If, then, they have not become a part of the common law of England, they form no part of our system.

It is more than probable that the political power of our State has never regarded the principle contained in the English statutes as necessary or applicable to the condition of our people. A law which would prevent the officious intermeddling in the suits of others, in no way concerning parties so interfering, might be a salutary law in any State or community; but it cannot be denied that cases often present themselves to the profession in which a good man may do a service to humanity by espousing the cause of the weak against the strong.

The offense of common barratry is a species of immorality against which no law is necessary to warn the American profession.

The reasons which led to the enactment of 32 Henry VIII. do not exist in this country. In a country where all the lands embraced in what was once three kingdoms are owned by about eleven thousand persons, who form a strong landed aristocracy, such a statute as that of 32 Henry VIII. might serve to keep the land titles within these aristocratic limits; but in this country we have land for the millions; and if a lawyer helps his client to recover lands from the possession of another, and even takes a part of the land for his fee, if the right of his client is clear to the land, we are unable to see any immorality or breach of professional ethics in the transaction. Yet it would certainly be very wrong for attorneys to become mere jobbers and speculators, to hunt up rotten titles and ferment litigation.

Regarding the third, fourth and fifth errors assigned as not well taken, we affirm the judgment of the District Court.

AFFIRMED.