413 P.2d 685

The STATE of Idaho, Plaintiff-Respondent,

v.

Adin HALL, Defendant-Appellant.

No. 9450.

Supreme Court of Idaho.

April 19, 1966.

Anderson, Kaufman & Anderson, Boise, for appellant.

Allan G. Shepard, Atty. Gen., Thomas G. Nelson, Deputy Atty. Gen., and James E. Scanlan, Asst. Atty. Gen., Boise, for respondent.

SMITH, Justice.

From a judgment of conviction in the Probate Court appellant appealed to the District Court where a trial de novo was had before a six-man jury. The instructions to the jury included the charging part of the complaint and the portion of I.C. § 18–4309 which reads:

"Every person who shall wilfully waste water for irrigation, or who shall wilfully open, close, change or disturb, or interfere with, any headgate or water box or valve measuring or regulating device, without authority, shall be guilty of a misdemeanor. * * *"

On March 25, 1963, one Ray Blair filed a complaint in the Probate Court of Elmore County, charging that on March 22, 1963:

"Adin Hall [appellant] * * * did * * * wilfully, unlawfully intentionally prevent and interfere with the proper delivery of irrigation water to the property of the said Ray Blair and wilfully waste the same by interfering with and disturbing a certain water regulating device, to-wit: A spillway located on Little Canyon Creek in Elmore County, Idaho, * * * in violation of Section 18–4309, Idaho Code."

The verdict which the jury returned reads:

"We, the jury in the above-entitled case, find the defendant guilty."

The trial judge, in its judgment, rendered on the verdict, recited that the jury "rendered their verdict of guilty to the offense as charged in the complaint," and thereupon entered judgment, in part reading:

"IT IS HEREBY ADJUDGED That the Defendant is guilty of the crime of interfering with a water regulating device, a misdemeanor, * * *"

from which judgment appellant has perfected an appeal.

Before approaching the merits of the appeal, we shall clarify the allegations of the criminal complaint and "pinpoint" the issue. We deem this advisable inasmuch as appellant proceeds upon the theory that he was charged with and convicted of the offense of wasting irrigation water, whereas the trial court adjudged him guilty of interfering with a water-regulating device; and respondent devotes the major portion of its brief and argument in asserting the sufficiency of the evidence to support a charge, and the judgment, of interfering with a water-regulating device.

The purported charge contained in the complaint that appellant did wilfully and unlawfully "interfere with the proper delivery of irrigation water to the property of

the said Ray Blair * * * by interfering with and disturbing a certain water-regulation device, to-wit: a spillway * * *," is an insufficient charge because of failure to allege the statutory requirement of I.C. § 18–4310, that appellant interfered with the proper delivery of the water *"to the person or persons having a right thereto"* (emphasis supplied). The charge of interfering with the proper delivery of water to the Blair property by interfering with a water-regulating device would not constitute a misdemeanor unless it be alleged, and proven, that Blair had *a right to the water.*

■ The charging part of the complaint, by reference to I.C. § 18–4309, is that appellant did wilfully waste irrigation water "by interfering with and disturbing a certain water-regulation device, to-wit: a spillway * * *". Thus, appellant was charged with the misdemeanor of wasting irrigation water, and not with that of wilfully interfering with a water-regulating device. Appellant was not charged with the latterly mentioned offense; therefore, the judgment purportedly adjudging him guilty thereof, is a nullity.

In its brief, respondent states that appellant was charged under I.C. § 18–4309, and that such section of the statute sets out the two distinct misdemeanors, viz., first, the wilful wasting of water, and second, the wilful interference with a water-regulating device. Respondent's statement, however, to the effect that the judgment shows appellant was convicted of the offense of wilful interference with a water-regulating device is incorrect; since, as hereinbefore pointed out, appellant could not have been adjudged guilty of the misdemeanor of wilfully interfering with a water-regulating device simply because he was not charged with that offense.

The only issue which merits consideration, as appellant correctly states, is whether the evidence is sufficient to show that appellant did "wilfully waste water for irrigation." Appellant, by his assignments of error, asserts the insufficiency of the evidence to sustain a verdict that he is guilty of the commission of that offense. We shall review the evidence, inasmuch as it is not in conflict, bearing upon the issue. The evidence has to do with Little Canyon Creek in Elmore County.

The waters of Little Canyon Creek are used for irrigation. The principal area so irrigated lies northwesterly and westerly from Glenns Ferry, and consists of about a dozen ranches, the most northerly of which are the Parmley Ranch, and the Glenn Ranch formerly owned by appellant Hall. The Berry Ranch, also irrigated by the stream, is situate along the creek about eleven miles northerly from Glenns Ferry and about nine miles upstream from the head of the main farming area.

The Herron Reservoir irrigates a ranch situated in the farming area northwesterly from Glenns Ferry. The point of diversion from Little Canyon Creek of waters stored in that reservoir is on the Berry Ranch; from the point of diversion the water is diverted southerly to the reservoir, the outlet of which runs to the Herron Ranch situated westerly from the Parmley Ranch, and in the main farming area.

Appellant owned the Glenn Ranch for about three years; he then sold it under a contract, dated March 12, 1963, to Samuel Blackwell. Because of the existent water situation on Little Canyon Creek, appellant assured Blackwell that he (appellant) would render assistance in obtaining the water to which the Glenn Ranch was entitled.

A decree referred to as the Corker decree, entered in 1898, adjudicated the rights to the use of the waters of Little Canyon Creek, with priorities extending back as far as 1871. The decree adjudicated the water rights for the ranches situated northwesterly and westerly of Glenns Ferry including the Parmley and Glenn ranches, the Berry Ranch and the storage rights in the Herron Reservoir, aggregating 811 miner's inches in the flow of the stream, and 10,000 miner's inches for storage in the reservoir.

The earliest adjudicated rights on Little Canyon Creek are for the Glenn and Parmley ranches. The adjudicated rights for the Glenn Ranch total 140 miner's inches of the waters of the stream.

Ray Blair and Lee Trail, in the late 1950's, under a permit issued by Idaho's Department of Reclamation, obtained a storage right in Little Canyon Creek. Blair and Trail thereupon constructed, across the creek, a dam, herein called the Blair Dam, completed about the year 1960. The dam is about 1½ miles southerly from the Berry Ranch and some 7 to 8 miles northerly from the main farming area north and west of Glenns Ferry.

The dam is about 30 feet high and 16 to 18 feet wide at the top. It creates an upstream pond of a surface area of about 10 acres. On the west side of the dam, there is a 40-foot spillway divided into 10-foot sections, which diverts the water into a canal leading to the Blair storage reservoir; there the water is stored for use on farmland several miles distant, belonging to Ray Blair and Lee Trail. The water is diverted into the canal by boards placed in the spillway. When the spillway is shut, all of the creek's water is diverted except 15 to 20 miner's inches.

Appellant partially opened the spillway on March 18, 1963, and thereby released water to the creek channel. That act is the basis for the charge that he wilfully wasted water for irrigation.

About 200 yards below the Blair Dam, Little Canyon Creek enters and continues

in a deep lava rock canyon for a distance of 7 to 8 miles to the main farming area north and west of Glenns Ferry. In that stretch of the creek, the canyon walls are practically perpendicular. In that area the stream bed is rocky, gravelly and porous.

At the downstream mouth of the canyon are situate the diversion points for irrigation of the Glenn and Parmley ranches. The diversion point for the Glenn Ranch is about 1½ miles upstream from the ranch. There are other points of diversion further downstream for irrigation of other ranches.

An east-west road extends between the Glenn and Parmley ranches. The creek, where it intersects the road, is bridged. The Bentley Springs rise in the creek through the Parmley Ranch. Waters from the springs, together with irrigation waters from the Herron Reservoir, and seepage from that reservoir, create flow at all times in the creek at the bridge. The flow from the springs and from the seepage enters the creek downstream from the diversion points for the Glenn and Parmley ranches, but upstream from the bridge. The flow at the bridge varies, up to 100 miner's inches, even though the creek's channel between the Blair Dam and the diversion points for the Glenn and Parmley ranches may be dry.

Normally Little Canyon Creek usually has a high run-off flow during the late winter and early spring when the snow melts in the mountain areas. The flow gradually recedes until mid-summer; it is then inadequate to reach the ranches in the main farming area.

When the bed of the stream between Berry Ranch and the ranches near Glenns Ferry, or between the Blair Dam and those ranches, is dry, it takes several days for the water, when turned into the channel, to reach the diversion points for the Glenn and Parmley ranches. The surface stream in the canyon does not flow through to the diversion points until the porous or gravelly bed of the stream is filled with water.

Starting in December, 1962, and continuing until March 15th or 16th, 1963, Blair and Trail diverted the entire stream at the Blair Dam, into the Blair canal and reservoir, except only the flow diverted upstream into the ditch leading to the Herron Reservoir. The creek channel downstream from the Blair Dam to the diversion points for the Glenn and Parmley ranches was dry.

The late winter and early spring of the year 1963 was a dry period. There was little snow or precipitation and consequently Little Canyon Creek had comparatively little run-off water. The lands in the farming area having adjudicated rights, and particularly the meadows of those ranches, were dry and in need of irrigation water by March 1, 1963.

Irrigation of the meadows on the Berry Ranch commenced in February, 1963, and

continued into March, when the earlier priorities took the water. Diversion of water to the Herron Reservoir continued through the late winter until in late February when the flow of the creek was taken for irrigation of the Berry Ranch. All return flow to the creek from irrigation of the Berry Ranch and from springs below the ranch, together with other waters of the creek, were diverted at the Blair Dam into the Blair canal.

On March 4, 1963, the water users elected appellant watermaster of Water District No. 2 in Elmore County, primarily for Cold Springs Creek and Bennett Creek and on the same day, elected Elmer Babington watermaster of the same district, primarily for Little Canyon Creek. The following day, the statutory notice, signed by owners of lands irrigated from Little Canyon Creek, was given to Idaho's Department of Reclamation for control of Little Canyon Creek and delivery of its waters under priorities on the stream. The channel of the creek was dry between the ranches and the Blair Dam.

The water users on the creek insisted that Blair return the flow of the creek to the stream channel. Blair maintained that he was entitled to divert the water until April 1, 1963, the so-called time of commencement of the irrigation season. Because of such prevailing situation, the water users held a meeting at Glenns Ferry on the morning of March 14, 1963. The watermasters attended the meeting, as did one Mr. Humphreys of the Department of Reclamation.

At the meeting the porous and dry condition of the creek bed in the canyon, the need of water for irrigation of the ranches, and the diversion of the water at the Blair Dam, were discussed. The water users had requested Mr. Babington to turn the water downstream from the Blair Dam because of the dry weather which necessitated the need of the water for irrigation. Believing that he was unable to act officially because of delay in obtaining his official bond, Mr. Babington had requested Mr. Humphreys to attend the meeting. The meeting recessed and reconvened at the Blair Dam for an on-site inspection. Mr. Humphreys, upon inspecting the dam site, the creek channel above and below the dam and the diversion points of water users below the dam, directed Blair to return the water to the creek channel. Either during the evening of the following day, March 15th, or by noon, March 16th, Blair complied with the directive.

Blair testified that on March 17th, he looked at the creek at the bridge on the road between the Glenn and Parmley ranches and estimated the flow to be 150 miner's inches. He did not examine the creek bed at the diversion points for the Glenn and Parmley ranches. He then tes-

tified that on March 18th he told water-master Babington that appellant was not using the water and requested that he, Blair, be allowed to redivert the water to his canal, and that Babington stated he had no authority to act because his "bond had not yet come;" that he, Blair, then telephoned Mr. Humphreys at the Department of Reclamation about the situation, who stated, "if that is the case, you can take the water." In any event, on March 18th, Blair proceeded to the Blair Dam, closed the spillway and resumed diversion of the creek flow into the Blair canal. Again, he did not examine the creek bed at the diversion points for the Glenn and Parmley ranches.

On March 18th, appellant observed that Blair was diverting the water at the Blair Dam. He thereupon released the water to the channel of the stream. This was the only time that appellant released the water. The following day, March 19th, Mr. Humphreys of the Department of Reclamation and Mr. Babington visited the Blair Dam for the purpose of ascertaining if the stream flow was being released to the channel. They both noted that the water was being released and was flowing down the channel. Mr. Humphreys never said anything to Mr. Babington that he, Humphreys, had authorized Blair to take the water the day before, on March 18th.

On March 20th, Mr. Blair visited the Blair Dam and observed that all of the stream flow was being diverted into the Blair canal. Since the day before, the spillway at the dam had been closed so that the water was again being rediverted from the stream channel to the Blair canal. The record does not disclose who closed the spillway on that occasion.

On March 24th, Blair, in company with Mr. Corb and Mr. Harris, tenants on the Lee Trail Ranch (Mr. Trail being Mr. Blair's "partner"), went to the Blair Dam and found that one of the boards in the spillway had been raised, which allowed a flow back into the channel of 90 to 95% of the water of the creek. They replaced the board in the spillway and again diverted the flow into the Blair canal. At about that time appellant, in the company of two others, arrived at the dam. Appellant requested Blair to return the water to the creek channel. Blair complied with the request. That evening Blair telephoned Mr. Babington to inquire if he could redivert the water and was informed that Samuel Blackwell (contract-purchaser of appellant's ranch) had requested the use of the water.

The flow of the stream at the Blair Dam, released to the creek channel on March 15th or 16th, March 17th and 24th, was approximately 150 miner's inches of water. Mr. Babington, the watermaster,

on March 25, 1963, diverted the whole flow of the stream at the diversion point for the Glenn Ranch; at that time and place the stream flow measured 91 miner's inches, and was insufficient to satisfy the adjudicated rights to both the Glenn and Parmley ranches.

The stream bed, at the diversion points for the Glenn and Parmley ranches, was examined on March 14th, again on March 16th and again on March 20th or 21st and was dry at all those times. There is no evidence of water in the stream bed at the point of diversion for the Glenn Ranch, prior to March 25th.

In addition to Blair's testimony that he observed an estimated 150 miner's inches of water flowing in the creek at the bridge on March 18th, Messrs. Blair, Harris and Corb, upon observing the stream at the bridge on March 24th, estimated the flow to be 150 miner's inches. Neither Blair, nor Harris, nor Corb had knowledge of the Bentley Springs along the creek channel at the Parmley Ranch, nor knowledge of waste and seepage to the creek from irrigation from Herron Reservoir and lands irrigated by it, nor of diversions downstream for irrigation.

Most of the dozen or more ranches in the main farming area served by Little Canyon Creek having adjudicated rights, are situate downstream from the Glenn Ranch. There is no evidence of the use of the waters of the stream at those ranches.

Witnesses testified that the meeting of the water users, held on March 14, 1963, which was attended by Mr. Humphreys of the Department of Reclamation and the watermasters, was for the purpose of obtaining release of the waters back to the stream channel, in order that the sub-channel fill so that the waters of the stream could flow on through to the diversion points of the adjudicated rights. The record supports the conclusion that Mr. Humphreys, on that date, requested Blair to release the water, for the same purpose. Appellant released the water on March 18th to the stream channel for the same purpose. Mr. Humphreys and Mr. Babington visited the Blair Dam on March 19th in order to see and know that the water was being released back to the channel so that the waters, in time, would flow downstream and be available for use under the adjudicated rights in the waters of the stream.

The evidence also supports the proposition that the water released at the Blair Dam intermittently from March 15th or 16th to March 25th, went to augment the water content in the channel of the creek so that the flow could reach the points of diversion for the adjudicated rights. By the time the water was diverted on March 25th at the Glenn Ranch, the surface flow

of Little Canyon Creek had reached only 91 miner's inches at the point of diversion for that ranch.

Essentially, the prosecution, in its attempt to show waste of irrigation water, relies upon the evidence showing the flow in Little Canyon Creek at the bridge between the Glenn and Parmley ranches. The bridge is 1½ miles downstream from the Glenn and Parmley diversion points and more than 2 miles upstream from the mouth of the creek. The estimated flow at the bridge was mere guesswork; the flow was never measured. Nor is the evidence controverted to the effect that the flow at the bridge comes from the Bentley Springs, which rise in the channel of the creek, and as seepage from the Herron Reservoir and from land irrigated by waters of that reservoir. Nor is there any evidence of uses of the water passing under the bridge, by downstream land owners having adjudicated rights in the flow of the stream. The fact that the water was flowing downstream at the bridge in nowise constitutes proof of waste of irrigation water either by appellant or otherwise.

We shall now consider the actions of appellant. He was interested in getting the flow to downstream points of diversion to the ranches having adjudicated rights. He was at the meeting of water users on March 14, 1963, attended by all but one

of the users of the waters of Little Canyon Creek. He was aware of the demands of those downstream water users; that they wanted the water under their adjudicated rights to irrigate their dry farm lands; also, that several days would be required for the flow to fill the dry sub-channel of the creek bed through the several miles of canyon, before the water could reach even the uppermost point of diversion which was above the Glenn Ranch. True, appellant had a financial interest in the contract of sale and purchase of that ranch, but that aspect nevertheless was overshadowed by the insistent demands of the water users and their need for irrigation water as quickly as possible because of the excessively dry season.

Moreover, appellant was a duly elected watermaster of Elmore County Water District No. 2, which included five creeks. On March 18, 1963, the district had not yet been subdivided, although there is evidence that by August of 1963 it had been subdivided into sub-districts. Thus, during March, 1963, appellant was still a watermaster for the water district, not yet subdivided. He, therefore, had authority to regulate the Blair spillway so as to permit the stream flow to reach the points of diversion of the adjudicated water rights downstream for use upon lands in dire need of the irrigation water.

It is the duty of a watermaster "to distribute the waters of the public stream, streams or water supply, comprising his water district, among the several ditches taking water therefrom according to the prior rights of each respectively, in whole or in part, and to shut and fasten, or cause to be shut or fastened, under the direction of the department of reclamation, the headgates of the ditches heading from such stream, streams or water supply, when in times of scarcity of water it is necessary so to do in order to supply the prior rights of others in such stream, or water supply * * *." I.C. § 42–607; Big Wood Canal Co. v. Chapman, 45 Idaho 380, 263 P. 45 (1927); Nampa & Meridian Irr. Dist. v. Barclay, 56 Idaho 13, 47 P.2d 916, 100 A.L.R. 557 (1935).

Where water rights of water users on a stream have been adjudicated, it is the duty of a watermaster during the scarcity of water to treat unadjudicated water rights as inferior and subordinate to decreed rights. I.C. § 42–607.

Furthermore, the time that the waters of the creek were flowing in the creek channel during the interim from the evening of March 15, 1963, or by noon on March 16th, until not later than March 20th was insufficient to fill the sub-channel of the bed of the porous stream bed through the several miles of the canyon below the Blair Dam, in order that the flow reach even the first point of diversion for the Glenn Ranch. Hence, though appellant released the water to the stream channel on March 18th (that being the only occasion he did so), the evidence is insufficient to show resultant waste of irrigation water, wilful on his part or otherwise, appellant's good faith being fully demonstrated by the evidence.

Under I.C. § 18–4309, the waste of irrigation water must have been done "wilfully." I.C. § 18–101, subd. 1, provides that the word "wilfully" when applied to the intent with which an act is done, implies a willingness to commit the act. It does not require any intent to violate the law.[1]

The word "wilfully" is more fully defined and interpreted in Archbold v. Huntington, 34 Idaho 558, 565, 201 P. 1041, 1043 (1921):

"* * * when applied to the intent with which an act is done or omitted, it

---

1. The word "wilfully," when applied to the intent with which an act is done or omitted, implies simply a purpose or willingness to commit the act or make the omission referred to. It does not require any intent to violate law, or to injure another, or to acquire any advantage. I.C. § 18–101, subdivision 1.

[wilfully] implies simply a purpose or willingness to commit the act or make the omission referred to. It does not require any intent to violate law, in the sense of having an evil or corrupt motive or intent. It does imply a conscious wrong, and may be distinguished from an act maliciously or corruptly done, in that it does not necessarily imply an evil mind, but is more nearly synonymous with 'intentionally' 'designedly' 'without lawful excuse,' and therefore not accidental."

See State v. Johnson, 74 Idaho 269, 261 P. 2d 638 (1953); also Ex parte Trombley, 31 Cal.2d 801, 193 P.2d 734 (1948); Murrill v. State Board of Accountancy, 97 Cal. App.2d 709, 218 P.2d 569 (1950).

 The term, "wilfully waste" as used in I.C. § 18–4309 thus implies the conscious commission of a wrong—the waste of irrigation water with intent and design that it be wasted and without lawful excuse. The evidence is insufficient to show any such intent on the part of appellant in turning the water downstream on March 18, 1963.

The judgment is reversed and the cause remanded with instructions to dismiss the criminal complaint.

McFADDEN, C. J., and McQUADE, TAYLOR and SPEAR, JJ., concur.