505 P.2d 321

**C. V. DeROUSSE, Plaintiff-Respondent,**

**v.**

**R. Keith HIGGINSON, as State Reclamation Engineer and Daniel R. Musselman as Water Master for Water District 12–A, Defendants-Appellants.**

No. 10720.

Supreme Court of Idaho.

Jan. 17, 1973.

1. 29 U.S.C.A. § 187.

2. 29 U.S.C.A. § 158(b)(4).

W. Anthony Park, Atty. Gen., Phillip M. Barber, Asst. Atty. Gen., Boise, for defendants-appellants.

Barry L. Marcus, Marcus & Marcus, Boise, for plaintiff-respondent.

John A. Rosholt, Parry, Robertson, Daly & Larson, Twin Falls, amicus curiae.

BAKES, Justice.

This entire controversy revolves around a construction and interpretation of §§ 42–605 and 42–607, Idaho Code, as amended, which grant to the watermaster of a water district certain powers and duties in connection with the distribution of waters from public streams in his district. The factual background is undisputed as shown by the affidavits filed with the court in connection with the plaintiff-respondent's motion for summary judgment which was granted by the trial court. This appeal is taken by the defendants-appellants from that order granting the motion for summary judgment.

The plaintiff-respondent, C. V. DeRousse, claims a water right by constitutional appropriation under Section 3 of Article 15 of the Idaho Constitution in the waters of Thorne Creek. Water district 12–A encompasses Thorne Creek which is a tributary of Mores Creek which in turn is a tributary of the Boise River. There have been prior water decrees adjudicating water rights on these waters of which the primary one is commonly known as the "Stewart Decree," Farmers Cooperative Co. v. Riverside Irrigation District, et al., Seventh Judicial District, Canyon County, filed January 20, 1906. Neither party contends that the plaintiff is precluded from asserting his water right by reason of the decree as apparently neither the plaintiff nor his predecessors were made parties to the action.

In the summer of 1968 the defendants determined that there was a scarcity of water in the Boise River to the extent that it was insufficient to satisfy the rights of persons having adjudicated rights under the "Stewart Decree" so that the defendants shut off plaintiff's diversion of water from Thorne Creek and gave him written notice to the effect that any interference with this action could lead to criminal prosecution. In taking such action, the defendants were acting under § 42–607, Idaho Code, as it then existed, to wit:

*"Distribution of water.*—It shall be the duty of said watermaster to distribute the waters of the public stream, streams or water supply, comprising his water district, among the several ditches taking water therefrom according to the prior rights of each respectively, in whole or in part, and to shut and fasten, or cause to be shut or fastened, under the direction of the department of reclamation, the headgates of the ditches heading from such stream, streams or water supply,

when in times of scarcity of water it is necessary so to do in order to supply the prior rights of others in such stream, or water supply: *provided, that any person or corporation claiming the right to the use of the waters of the stream or water supply comprising a water district, but not owning or having the use of an adjudicated right therein, shall, for the purposes of distribution, during the scarcity of water, be held to have a right subsequent to the adjudicated rights in such stream or water supply, and the watermaster shall close all headgates of ditches having no adjudicated right if necessary to supply adjudicated rights in such stream or water supply, provided that any water right, the priority of which has been decreed, shall be deemed to be adjudicated within the meaning of this section.*" (Emphasis added).

Based upon these facts the plaintiff De-Rousse filed suit against the defendants alleging the basic facts including the interference with the claimed constitutional water right of plaintiff, prayed for a declaratory judgment interpreting § 42-607 and an injunction against the defendants from interfering with plaintiff's diversion of water from Thorne Creek. Thereafter the plaintiff filed a motion for summary judgment together with supporting affidavits.

While this first motion was pending, the legislature amended § 42-607 and § 42-605, Idaho Code, as set forth in Chapter 305 of the 1969 Session Laws. Section 42-607, Idaho Code, quoted above, was amended to read as follows:

*"Distribution of water.*—It shall be the duty of said watermaster to distribute the waters of the public stream, streams or water supply, comprising his water district, among the several ditches taking water therefrom according to the prior rights of each respectively, in whole or in part, and to shut and fasten, or cause to be shut and fastened, under the direction of the department of reclamation, the headgates of the ditches heading from such stream, streams or water supply, when in times of scarcity of water it is necessary so to do in order to supply the prior rights of others in such stream, or water supply: ~~provided, that any person or corporation claiming the right to the use of the waters of the stream or water supply comprising a water district, but not owning or having the use of an adjudicated right therein, shall, for the purposes of distribution, during the scarcity of water, be held to have a right subsequent to the adjudicated rights in such stream or water supply, and the watermaster shall close all headgates of ditches having no adjudicated right if necessary to supply adjudicated rights in such stream or water supply, provided that any water right, the priority of which has been decreed, shall be deemed to be adjudicated within the meaning of this section~~ SO LONG AS A DULY ELECTED WATERMASTER IS CHARGED WITH THE ADMINISTRATION OF THE WATERS WITHIN A WATER DISTRICT, NO WATER USER WITHIN SUCH DISTRICT CAN ADVERSELY POSSESS THE RIGHT OF ANY OTHER WATER USER."*

In addition, § 42-605 was amended in part to add the following definition:

" . . . for the purposes of this chapter, a 'right' shall mean any water right which has been adjudicated by the court or is represented by valid permit or license issued by the department of reclamation."

As a result of the amendments concerning the powers of a watermaster, the plaintiff DeRousse amended his complaint alleging the new law and again praying for a declaratory judgment interpreting the statute, and for an injunction against the defendant from interfering with his claimed constitutional water right. Both parties acknowledge that § 42-607, Idaho Code, before the 1969 amendment instructed the watermaster to give adjudicated water rights a complete preference over unadjudicated water rights in times of water scar-

city to the extent of closing all headgates of ditches of unadjudicated water rights if necessary to supply sufficient water for the adjudicated rights. *See* Big Wood Canal Co. v. Chapman, 45 Idaho 380, at 405, 263 P. 45 (1927).

The plaintiff now contends that as a result of the 1969 amendment this instruction to the watermaster was expressly stricken and withdrawn so that under the statute itself the watermaster has no jurisdiction or control over unadjudicated water rights claimed to have been appropriated in the constitutional method by diversion and appropriation to beneficial use. On the other hand the defendants contend that the 1969 amendment to §§ 42–607 and 42–605, Idaho Code, preserved the defendants' legal authority to shut off plaintiff's diversion of water from Thorne Creek so long as his rights to the use of said waters are not represented by a court's decree or by a permit or license issued by the Idaho Department of Reclamation. In essence, the trial court held that the Idaho statutes as constituted after the 1969 amendment left the defendants without any jurisdiction or control over unadjudicated water rights within the district not represented by a permit or license. By reason thereof the trial court entered a permanent injunction prohibiting the defendants from shutting off plaintiff's diversion of water under §§ 42–605 and 42–607, Idaho Code, as presently constituted.

The question before the court, therefore, is an interpretation of the 1969 amendment to the above quoted statutes. We first concur with the parties to the action that prior to the 1969 amendment, § 42–607, Idaho Code, purported to grant to the watermaster the right to shut off unadjudicated water rights within the district during the time of water scarcity and give preference to all adjudicated water rights on the stream. *See* Big Wood Canal Co. v. Chapman, *supra*. The relevant language purporting to grant this power was stricken and removed from this statute by the 1969 amendment.

■ It has long been held by this court that when a statute is amended by the legislature a presumption arises that a change in application of the statute was intended. Anderson v. Rayner, 60 Idaho 706, 713, 96 P.2d 244 (1939). "When a statute is amended, it is presumed that the legislature intended it to have a meaning different than that accorded to it before the amendment." Wellard v. Marcum, 82 Idaho 232, 239, 351 P.2d 482 (1960). *See* Employment Security Agency v. Joint Class "A" School District No. 151, 88 Idaho 384, 391, 400 P.2d 377 (1965).

■ Therefore, inasmuch as substantial changes were made in §§ 42–607 and 42–605, Idaho Code, we must presume that the legislature intended for the statutes to have a different meaning from that accorded to them before the amendment. In making such a statutory interpretation or construction, it is a ". . . universal rule of statutory construction that a statute must be construed in the light of its intent and purpose." Jorstad v. City of Lewiston, 93 Idaho 122, 125, 456 P.2d 766, 769 (1969).

"The primary function of the appellate court in construing a statute is to ascertain the legislative intent and give effect thereto. Knight v. Employment Security Agency, 88 Idaho 262, 398 P.2d 643 (1965); Messenger v. Burns, 86 Idaho 26, 382 P.2d 913 (1963); Lebrecht v. Union Indemnity Co., 53 Idaho 228, 22 P.2d 1066, 89 A.L.R. 640 (1933)." Idaho Public Utilities Commission v. VI Oil Co., 90 Idaho 415, 420, 412 P.2d 581, 583 (1966).

Furthermore, if possible, it is incumbent upon a court to give a statute an interpretation which will not in effect nullify it. Filer Mutual Telephone Co. v. Idaho State Tax Commission, 76 Idaho 256, 261, 281 P. 2d 478 (1955).

"We adhere to the cardinal rules of construction which require that courts should not nullify a statute or deprive a law of potency and force unless such course is absolutely necessary; meaning and effect should be given to every section of a code

in all its parts, if possible to do so." Sampson v. Layton, 86 Idaho 453, 457, 387 P.2d 883 (1963).

With the foregoing principles of statutory construction in mind we now address ourselves to the problem of determining the meaning of § 42–607, Idaho Code, as amended by Chapter 305 in the 1969 Session Laws. Section 42–607 was enacted by House Bill 146, Section 26, 1903 Idaho Session Laws. As originally enacted it read in pertinent part as follows:

"Sec. 26. It shall be the duty of said water master to divide the water in the natural stream or streams of his district among the several ditches taking water therefrom according to the prior rights of each respectively in whole or in part and to shut and fasten, or cause to be shut and fastened, under the direction of the water commissioner of his water district the head gates of ditches heading in any of the natural streams of the district, when, in times of scarcity of water, it is necessary so to do by reason of priority of rights of others taking water from the same stream, or its tributaries."

In 1909 the section was amended by House Bill 68, adding among other things the following proviso:

". . . Provided, That any person or corporation claiming the right to the use of the waters of the stream or water supply comprising a water district, but not owning or having the use of an adjudicated right therein, shall, for the purpose of distribution, during the scarcity of water, be held to have a right subsequent to the adjudicated rights in such stream or water supply, and the water master shall close all headgates of ditches having no adjudicated right if necessary to supply adjudicated rights in such stream or water supply." H.B. 68, 1909 Session Laws, p. 326, at 329.

The section then remained substantially the same with certain minor changes until this suit was filed by the plaintiff-respondent. Shortly thereafter, Chapter 305 of the 1969 Session Laws was enacted which in essence struck the proviso which had been added in 1909. Additionally, Chapter 305 of the 1969 Session Laws amended 42–605 to define water "right" as any water right represented by a valid permit or license, or one which had been adjudicated by a court. Before the 1969 amendment, 42–607 was twice mentioned by this court as providing that the watermaster has the duty during the times of scarcity of water to treat unadjudicated water rights as inferior and subordinate to decreed rights. See Big Wood Canal Co. v. Chapman, 45 Idaho 380 at 405, 263 P. 45 (1927); State v. Hall, 90 Idaho 478 at 489, 413 P.2d 685 (1966). This is basically what the defendants did in the instant case by shutting off the diversion of water by the plaintiff on the ground that his right was unadjudicated and therefore inferior to adjudicated rights on Thorne Creek. The 1969 amendment, however, completely eliminates all reference in § 42–607 to unadjudicated water rights appropriated under the Idaho Constitution and expressly deletes the reference that such unadjudicated water rights in times of scarcity of water be shut off until all adjudicated water rights have been fulfilled. In other words, the preference of adjudicated water rights over unadjudicated water rights was deleted from the statute. As a result of the 1969 amendment, there is absolutely no reference to unadjudicated water rights in the powers, duties and instructions to the watermaster of a water district. We therefore find that the amendment shows a clear intention on the part of the legislature to eliminate any preference of adjudicated water rights over unadjudicated water rights in times of water scarcity and that the watermaster has no jurisdiction or control over unadjudicated water rights.

Defendants contend that the remaining language in I.C. § 42–607, as amended, taken together with the definition of "right" as added to I.C. § 42–605, shows the legislative intent to be that both adjudicated and permit or licensed water rights be granted priority over constitutional use rights, and that the watermaster has authority to shut

off use rights during time of scarcity. That portion of I.C. § 42–607 giving the watermaster his authority reads as follows:

"It shall be the duty of said watermaster to distribute the waters . . . among the several ditches . . . according to the prior rights . . . ."

Since, by definition in I.C. § 42–605, "rights" do not include constitutional use rights, the watermaster does not have authority to deal with such use rights, regardless of scarcity.

This conclusion is supported by the fact that § 42–605 was amended by adding the definition for the word "right" to state that it shall mean only adjudicated water rights or those held under a valid permit or license issued by the Department of Reclamation. In further examining Chapter 305 of the 1969 Session Laws it is to be noted that throughout § 42–605 all references to an "adjudicated right" were amended by Chapter 305 of the 1969 Session Laws by striking the word "adjudicated." We therefore conclude that under Chapter 6 of Title 42 a watermaster has no jurisdiction or control over an unadjudicated water right. This is further substantiated by the fact that § 42–604, dealing with the creation of water districts, expressly provides that no water district can be created so as to apply to streams or water supplies which have not been adjudicated by a court of competent jurisdiction.

■ One further amendment was made to § 42–607 by adding the new phrase:

". . . so long as a duly elected watermaster is charged with the administration of the waters within a water district, no water user within such district can adversely possess the right of any other water user."

This portion of the amendment appears to be in part a statutory enactment of the doctrine pronounced in Big Wood Canal Co. v. Chapman, *supra*, in which it was held that one party could not obtain a prescriptive or adverse possession right against another in and to a water right which was being administered and distributed by a water-master. However, this doctrine announced by the court in that case was done in the same paragraph as the discussion of the right of priority of adjudicated water rights over unadjudicated water rights within a water district and the duty of the watermaster to grant a preference to the adjudicated rights. As the 1969 amendment withdrew any jurisdiction of the watermaster over unadjudicated constitutional water rights in the water district, the legislature apparently felt it was necessary to place this doctrine in statutory form as the watermaster would no longer have any control or jurisdiction over the unadjudicated rights.

We are not unmindful of the cogent reasons expressed on behalf of defendants for the adoption of a policy which would allow the watermaster to control all of the rights in a ditch including unadjudicated use rights. However, we must accept the policy set out by the legislature in the statute, as we view it, and if this policy is not in the best interests of irrigated agriculture in the state, or if we have misinterpreted the legislative policy, there will be ample opportunity for the next session of the legislature to make any necessary changes. In the meantime, since there is nothing to indicate there are other users on Thorne Creek who would be adversely affected by the diminished water supply as a result of plaintiff's appropriation, there is much less injury to the Boise River water system as a whole as a result of allowing plaintiff to continue to divert his five inches of water than would be to plaintiff if he were totally prevented from using any water from Thorne Creek.

■ The trial court correctly held that §§ 42–605 and 42–607, Idaho Code, as presently constituted, do not give the defendants any legal authority over water rights not represented by a court decree or by a permit or license issued by the Idaho Department of Reclamation and that the defendant be permanently enjoined from shutting off plaintiff's diversion of water from Thorne Creek pursuant to §§ 42–605 and 42–607, Idaho Code. Because of this disposi-

tion it is not necessary to discuss the constitutional and other contentions of the parties.

Accordingly, we affirm, with costs to respondent.

McQUADE, C. J., DONALDSON, J., and WARD, District Judge, concur.

McFADDEN, Justice (dissenting).

It is my conclusion that the trial court erred in its interpretation of the effect of the amendment of I.C. § 42–605 and § 42–607, by S.L.1969, Ch. 305, and that the trial court's judgment should be reversed.

This Court in Walbridge v. Robinson, 22 Idaho 236, 125 P. 812 (1912), in discussing the relationship between the state and water users of this state, and in considering the provisions of Idaho Const. art. 15, § 1, stated:

> "We think it is clear that the title to the public waters of the state is vested in the state for the use and benefit of all the citizens of the state under such rules and regulations as may be prescribed from time to time by the law-making power of the state. This is not, however, an interest or title in the proprietary sense, but rather in the sovereign capacity as representative of all the people for the purpose of guaranteeing that the common rights of all shall be equally protected and that no one shall be denied his proper use and benefit of this common necessity. The interest which an individual or the state may have in such things as water and gas and wild animals has received special consideration from courts and text-writers on account of the tendency of these things to escape beyond the power of control or possession or management of any particular person and without the volition of the one who claims to be the owner. They have, nevertheless, been classed together by most of the authorities." 22 Idaho at 241–242, 125 P. at 814.

In the Walbridge case, this Court, after reviewing the authorities considering the nature of the state's interest in water, stated:

> "It will be found that the authorities quite uniformly class wild animals, fish, water, gas, light, and air as things of the 'negative community,' or the property of no one, and that they are consequently *res communes* and subject to the regulation and control of the state in its sovereign capacity." 22 Idaho at 243, 125 P. at 814.

From this premise, i. e., that the title to the public waters of this state is vested in the state in its sovereign capacity for "the use and benefit of all the citizens of this state under the rules and regulations as may be prescribed from time to time by the law making power of the state," it logically follows that the legislature has broad powers to administer the water in this state. In conformity with this authority the legislature enacted I.C. § 42–101 which provides not only that the control of the waters shall be in the state, but that the state "shall equally guard all the various interests involved." That section also provides:

> "All the waters of the state, when flowing in their natural channels, * * * are declared to be the property of the state, whose duty it shall be to supervise their appropriation and allotment to those diverting the same therefrom for any beneficial purpose, and the right to the use of any of the waters of the state for useful or beneficial purposes is recognized and confirmed * * *."

The legislature also established a procedure to distribute among the various water users on any particular stream the waters flowing therein. See I. C. § 42–601 et seq. Under the provisions of that chapter the department of reclamation (Department of Water Administration, I.C. § 42–1801a) is charged with the duty of direction and control of distribution of the waters from the streams to the ditches and canals. I.C. § 42–602. Watermasters administer the diversion of the water out of the streams and are annually elected in each of the water districts within the state. I.C. § 42–604

provides for creation of water districts,[1] "in such manner that each public stream and tributaries, or independent source of water supply, shall constitute a water district." That section, however, is inapplicable "to streams or water supplies whose priorities of appropriation have not been adjudicated by the courts having jurisdiction thereof." I.C. § 42–605 provides for the election of watermasters in their respective water districts throughout the state.

Lists for the distribution of water are required to be prepared. I.C. §§ 42–1403, 42–1404. This information comes from the clerks of the district courts and serves as the basis for the watermaster's compliance with I.C. § 42–607:

"It shall be the duty of said watermaster to distribute the waters of the public stream, streams or water supply, comprising his water district, among the several ditches taking water therefrom according to the prior rights of each respectively, in whole or in part, and to shut and fasten, or cause to be shut or fastened, under the direction of the department of reclamation [department of water administration], the headgates of the ditches heading from such stream, streams or water supply, when in times of scarcity of water it is necessary so to do in order to supply the prior rights of others in such stream, or water supply so long as a duly elected watermaster is charged with the administration of the waters within a water district, no water user within such district can adversely possess the right of any other water user."

As amended, I.C. § 42–607 provides that it is the duty of the watermaster to "distribute *waters* of the public stream." (Emphasis supplied.) He is thus the individual charged with the responsibility of distributing all the waters of the stream. The waters are to be distributed "among the several ditches taking water * * * according to the prior rights of each respectively * * *." From the statute which defines the term

"rights" it is clear that in a water district the watermaster can consider only decreed rights, or rights recognized as permits or licenses by the department of reclamation.

As amended I.C. § 42–607 provides that it shall be the duty of the watermaster to distribute waters according to the "prior rights" within his water district. It further provides that, as part of this duty, the watermaster must, in times of scarcity, shut or fasten the headgates or ditches "heading from such stream" if "it is necessary so to do in order to supply the prior rights of others."

It is to be kept in mind that the authority of the watermaster in his district is to control the delivery of the water from the source of supply, i. e. "the public stream, streams or water supply, comprising his water district," into the respective ditches or canals leading from the main stream. The watermaster is confronted by two significant problems when delivering water within his water district: first, he must maintain the constitutional requirement of priority of water rights among the various users; second, he is confronted with the practical problem of delivering water to the correct point of diversion. When one considers the magnitude of the watermaster's problem of water delivery in his water district, it is evident that a proper delivery can only be effected when the watermaster is guided by some specific schedule or list of water users and their priorities, amounts, and points of diversion. Such a list is required by the provisions of I.C. §§ 42–1403 and 42–1404.

Only by having a specific list reciting the names of the water users, with their dates of priority, amounts, and points of diversion can such a system be administered. Since the so-called "constitutional use right" is unrecorded in respect to priority, amount and point of diversion, the whole system of delivery in a water district would be endangered if such a right were recognized.

---

1. Water districts provided by I.C. § 42–604 are not to be confused with "irrigation districts" provided for by Title 43 of the Idaho Code.

In amending the two provisions, I.C. §§ 42–605 and 42–607, the legislature intended to grant to the holders of permits or licenses issued by the department of reclamation, the right not only to participate in the annual water meetings, but the right to vote at the annual election and participate in the processes for administration of the district. By striking that portion of I.C. § 42–607 which stated,

" * * * provided, that any person or corporation claiming the right to the use of the waters of the stream or water supply comprising a water district, but not owning or having the use of an adjudicated right therein, shall, for the purposes of distribution, during the scarcity of water, be held to have a right subsequent to the adjudicated rights in such stream or water supply, and the watermaster shall close all headgates of ditches having no adjudicated right if necessary to supply adjudicated rights in such stream or water supply * * *."

the legislature in no way changed the duty of the watermaster. He is still charged with the responsibility of distributing the water of the stream only to the ditches out of the stream by which water users holding decreed rights or permits or licenses draw the water. It is also worthy of note that the criminal code has provided for criminal liability for individuals who interfere with the performance of the watermaster's duties. I.C. § 18–4304 et seq.

It is thus my conclusion that only by construing the provisions of I.C. § 42–607 as above pointed out can the overall policy and scheme of water administration of this state be carried out. See I.C. § 42–101. All those individuals that enjoy the use of water by reason of having their rights adjudicated, or that have the use of water by reason of permits or licenses issued from the department of reclamation, are entitled to expect the state, which has granted them the right to the use of water, to protect them in their established rights.

If the trial court's interpretation of I.C. § 42–607 is allowed to stand, the validity of any decreed right or water permit or license would be placed in jeopardy. If anyone claimed a constitutional "use right," and took the water from the stream, the watermaster charged with the responsibility of administering the stream would be powerless to act. Consequently, a person enjoying a prior right established by a decree, permit or license, would be subject to losing his use of the water by anyone claiming a "constitutional use right" without regard to its priority.

Even though the legislature by S.L.1969, Ch. 305, amended I.C. §§ 42–605 and 42–607 as pointed out in the majority opinion, it is my conclusion that these amendments in no way affected the duty of the watermaster to distribute the waters of the stream which he is required to administer.

However, the respondents contend that if the interpretation of I.C. § 42–607 urged by appellants is adopted that statute would be unconstitutional. In summary, respondent asserts that: it would deny him the right to appropriate the unappropriated waters of a natural stream under Idaho Const. art. 15, § 3; it would constitute a taking of private property for public use without just compensation contrary to Idaho Const. art. 1, § 14; it would be a regulation of his property in excess of the state's police power and a denial of his right to acquire, possess and protect property contrary to Idaho Const. art. 1, § 1; it would be a deprivation of property without due process of law, contrary to Idaho Const. art. 1, § 13; and in violation of the United States Constitution 14th Amendment, it would constitute a denial of his right to equal protection of the law under the United States Constitution 14th Amendment.

In considering these constitutional challenges, it must be kept in mind that all the waters of this state flowing in their natural stream channels are the property of the State. Walbridge v. Robinson, 22 Idaho 236, 125 P. 812 (1912). See also, Boise City Irrigation & Land Co. v. Stewart, 10 Idaho 38, 77 P. 25 (1904).

It is basic to our constitutional law that the state may reasonably regulate property and the use of it to serve a proper purpose under the police power. Idaho Falls v. Grimmett, 63 Idaho 90, 117 P.2d 461 (1941); Chambers v. McCollum, 47 Idaho 74, 272 P. 707 (1928); Zahn v. Board of Public Works, 195 Cal. 497, 234 P. 388, 394 (1925), aff'd, 274 U.S. 325, 47 S.Ct. 594, 71 L.Ed. 1074. It is equally basic that, unless an exercise of the police power having a proper purpose is so unreasonable as to be arbitrary and capricious, it will not be struck down by this Court. Berry v. Koehler, 84 Idaho 170, 369 P.2d 1010 (1962).

Since all the waters of this state flowing in their natural stream channels are the property of the State (I.C. § 42–101), the State, in its exercise of its police powers, may supervise and control the methods of appropriation, diversion and use of the public waters of the state, and repose the administration thereof in an executive officer. State ex rel. Tappen v. Smith, 92 Idaho 451, 444 P.2d 412 (1968); Speer v. Stephenson, 16 Idaho 707, 102 P. 365 (1909). The supervision by the state of withdrawal and use of water by and among the various claimants to its waters is an activity which is comprehended by the police power. *See*, Laramie Irrigation & Power Co. v. Grant, 44 Wyo. 392, 13 P.2d 235 (1932); Farmers Independent Ditch Co. v. Agricultural Ditch Co., 22 Colo. 513, 45 P. 444 (1896). I can find nothing in the statutes involved in this action so arbitrary or capricious which renders the exercise of the police power invalid.

In Enterprise Irr. Dist. v. Willis, 135 Neb. 827, 284 N.W. 326, 328–329 (1939), the Supreme Court of Nebraska in dealing with statutes comparable to those in Idaho concerning the authority of a state to supervise and control the appropriation, diversion and distribution of its waters stated:

"That the state may supervise and control the appropriation, diversion and distribution of the public waters of the state and impose that duty upon ad-

ministrative officers is settled by our former decisions. Farmers' Canal Co. v. Frank, 72 Neb. 136, 100 N.W. 286. Statutory provisions relating to the duties of administrative officers, insofar as they require or authorize a control and regulation of the diversion and distribution of appropriated waters in accordance with adjudicated priorities, are not inimical to the provisions of the state and federal Constitutions. As was said in Farmers' Canal Co. v. Frank, 72 Neb. 136, 100 N.W. 286, 294: 'It is the evident purpose of the law, taken as a whole, to enforce and maintain a rigid economy in the use of the waters of the state. It has been and is the policy of the law in all the arid states and territories to require and enforce an economical use of the waters of the natural streams. The urgent necessities of the situation compel this policy by the very force of circumstances. One of the main objects of the system of administration of public waters prescribed throughout the arid regions is to restrain unnecessary waste, and to provide for an economic distribution of that element so necessary to the very existence of agriculture in those regions. This is also the policy of the state of Nebraska in its regulation of the use of the waters of the state, and the law should be construed so as to effect a reasonable, just, and economic distribution of water for irrigation purposes.'"

At 284 N.W. 329, the court continues:

"The various statutory provisions for the distribution of water among different appropriators according to their respective priorities by administrative officers of the state were undoubtedly enacted in furtherance of a wise public policy to afford an economical and speedy remedy to those whose rights are wrongfully disregarded by others, as well as to prevent waste, and to avoid unseemly controversies that may occur where many persons are entitled to share a limited supply of public water for the

purposes of irrigation. Such provisions have generally been sustained as a part of the police power of the state."

It is recognized that the respondent asserts that he has an existing *right* to the use of waters out of Thorne Creek, but the details of his right are not spelled out. In affidavits it is asserted that this right dates back to 1872. However, it cannot be determined from the record before the Court where: the amount of water he claims has been applied, the acreage irrigated has been identified, or the duty of water has been established. The amount of water, its duty, and its use and application are elements essential in determining the extent and priority of a water right. Only by having such claims presented to and adjudicated in a court of competent jurisdiction could the early priority claimed by respondent and the extent of his right be established. Not until the right has been adjudicated (or if a later date of priority is sought, an application for permit is submitted to the commissioner of reclamation), can it be established that at the time of his claimed appropriation he or his predecessors were actually taking "unappropriated waters" of a natural stream. In other words, until such time as it has been determined that there were waters flowing in the stream subject to appropriation, the validity of respondent's "constitutional use right" is not established, and at most, all that can be said is that he has an inchoate right which has not as yet been established.

As long as no other individual contested respondent's use of the water he would have no problem. However, in the instant case, the water was diverted from a stream which allegedly was within the boundaries of Water District 12A. The watermaster, in distributing the water in the district, relied out of necessity on the lists of water rights furnished him by the department of reclamation. Since the respondent's claimed right was not on that list, there was nothing further that the watermaster could do but stop the respondent's use of the water. Only after respondent establishes his claim, or until such time that respondent establishes that his rights have already been adjudicated, can the respondent's claim to the water be recognized.

Respondent further contends that he is being deprived of a "right" without due process of law as guaranteed under the Fourteenth Amendment of the Constitution of the United States. He cites to this Court Fuentes v. Shevin, 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972). The opinion in Fuentes v. Shevin dealt with the issues presented by two separate appeals from two three-judge federal district courts, which upheld the constitutionality of Florida and Pennsylvania laws authorizing the summary seizure of goods or chattels in a person's possession under a prejudgment writ of replevin. The United States Supreme Court struck down the statutes of each of these two states on the basis that the statutory procedures violated the Fourteenth Amendment's guarantee that no state shall deprive any person of property without procedural due process of law.

It is my conclusion that the decision in Fuentes v. Shevin is not applicable to this case. There the Court considered primarily whether sellers of personal property by conditional sales contracts could have an officer of the state physically seize such personal property without prior notice to the property's possessor. In this case, however, the state itself is asserting the right to control its own property. Furthermore, the extent of the respondent's claim has never been established. At most, the respondent has an inchoate right to the use of the waters, but to date, this right has not been established.

The United States Supreme Court in Fuentes v. Shevin, *supra*, recognized that there are extraordinary situations when postponing notice and opportunity for hearing is justified. That Court stated:

"There are 'extraordinary situations' that justify postponing notice and opportunity for a hearing. (Citation.)

These situations, however, must be truly unusual. Only in a few limited situations has this Court allowed outright seizure without opportunity for a prior hearing. First, in each case, the seizure has been directly necessary to secure an important governmental or general public interest. Second, there has been a special need for very prompt action. Third, the State has kept strict control over its monopoly of legitimate force; the person initiating the seizure has been a government official responsible for determining, under the standards of a narrowly drawn statute, that it was necessary and justified in the particular instance." 92 S.Ct. at 1999.

It is my conclusion that in the instant case the situation is the very type of case to fall within the exceptions above. There is an important governmental interest, i. e. state ownership and control of waters flowing in thier natural channels, Walbridge v. Robinson, 22 Idaho 236, 125 P. 812 (1912); a general public interest in recognizing the constitutional provision that priority in time gives priority in use of water (Idaho Const. art. 15, § 5); the arid character of the lower Boise River Valley and the exigencies of water demand during the growing season; the watermaster acts only in his official capacity while administering the streams within his water district.

Justice Holmes in Hudson County Water Co. v. McCarter, 209 U.S. 349, 28 S.Ct. 529, 52 L.Ed. 828 (1908), in considering the interests of a state in its waters, stated:

"The problems of irrigation have no place here. Leaving them on one side, it appears to us that few public interests are more obvious, indisputable, and independent of particular theory than the interest of the public of a state to maintain the rivers that are wholly within it substantially undiminished, except by such drafts upon them as the guardian of the public welfare may permit for the purpose of turning them to a more perfect use. This public interest is omnipresent whenever there is a state, and grows more pressing as population grows. It is fundamental, and we are of the opinion that the private property of riparian proprietors cannot be supposed to have deeper roots. Whether it be said that such an interest justifies the cutting down by statute, without compensation, in the exercise of the police power, of what otherwise would be private rights of property, or that, apart from statute, those rights do not go to the height of what the defendant seeks to do, the result is the same. But we agree with the New Jersey courts, and think it quite beyond any rational view of riparian rights, that an agreement, of no matter what private owners, could sanction the diversion of an important stream outside the boundaries of the state in which it flows. The private right to appropriate is subject not only to the rights of lower owners, but to the initial limitation that it may not substantially diminish one of the great foundations of public welfare and health." 209 U.S. at 356, 28 S.Ct. at 531.

From affidavits in the record before the Court it can be gleaned that respondent claims the right to appropriate water since 1872, or 1890, or 1900, the record being unclear as to which date. Nowhere in the record is there found any claim that respondent's predecessors in interest at any time attempted to take advantage of any of the statutory provisions concerning the posting of notice to claim a water right and thereafter to record it, or to institute an application for permit to appropriate, or to join in any adjudication of the waters of the stream, or to seek a supplemental adjudication. It is my conclusion that over the course of these many years, from the time of the first claim of rights of the stream, down to the date of the current litigation, respondent and his predecessors have disregarded or ignored the means pro-

vided by which this claim could have been given that recognition necessary for protection under the laws of this state and system of water distribution.[2]

The summary judgment of the district court should be reversed and the cause remanded for further proceedings.

---

**2.** Perhaps an explanation of respondent's failure to act is to be found in the fact that only on May 27, 1968, was an order entered by the State Reclamation Engineer changing the boundaries of Water District 12A. Respondent alleges that

in August, 1968, the watermaster of Water District 12A prevented him from using his water right. No issue has been presented by this appeal as to the validity of the order changing the boundaries and no opinion is expressed thereto.